UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROL WHYBLE, ANTHONY BROWN,
REBECCA CARRANZA, SUE DEMELE,
SHERRY GREENE, RENEE RANDALL,
BRENDA TUCKER, and CHARLES GEOFFREY
WOODS, *individually and on behalf of all others
similarly situated*,

                          Plaintiffs,

    -against-

THE NATURE'S BOUNTY CO.,

                          Defendant.

No. 20 Civ. 3257 (NSR)
OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/2023

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Carol Whyble, Anthony Brown, Rebecca Carranza, Sue Demele, Sherry Greene, Renee Randall, Brenda Tucker, and Charles Geoffrey Woods (collectively, "Plaintiffs") bring this putative class action against Defendant The Nature's Bounty Co. ("Defendant" or "Nature's Bounty") alleging false and misleading advertising and marketing of Defendant's Osteo Bi-Flex products. Specifically, Plaintiffs bring claims for breach of express warranty, unjust enrichment, negligent misrepresentation, and fraud, as well as violations of the consumer protection statutes of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington. Before this Court is Defendant's motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

    For the following reasons, Defendant's motion to dismiss is granted.

## BACKGROUND

### I.   Procedural Background

    On April 24, 2020, Plaintiff Carol Whyble filed the operative class action complaint. (Compl., ECF No. 1.) On June 25, 2020, before Defendant had filed an answer or otherwise

responsive pleading, Plaintiff Whyble filed the first amended complaint adding seven new plaintiffs. ("FAC," ECF No. 6.) On January 8, 2021, Defendant filed a motion to stay pending the Ninth Circuit's decision in *Seegert v. Rexall Sundown, Inc.*, No 20-55486, 2022 WL 301553 (9th Cir.), or in the alternative, a motion to dismiss. (ECF No. 31.) On January 5, 2022, this Court granted Defendant's request to stay and denied Defendant's motion to dismiss. (ECF No. 48.) On February 2, 2022, Plaintiffs notified the Court of the Ninth Circuit's decision in *Seegert*, and the Court lifted the stay on April 5, 2022. (ECF Nos. 49, 55.)

On May 27, 2022, Plaintiffs filed their Second Amended Complaint ("SAC") on behalf of a multistate class of all individuals who purchased Osteo Bi-Flex in the United States (the "multistate class") as well as subclasses of individuals who purchased the Products in eight states (the "state subclasses"), asserting claims for[1]: (1) breach of express warranty; (2) unjust enrichment; (3) negligent misrepresentation; (4) fraud; (5) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (6) violations of the Illinois Deceptive Practices and Consumer Fraud Act ("IDPCFA"), 815 ILCS 505/2; (7) violations of Massachusetts' Consumer Protection Act ("MCPA"), Mass. Gen. Laws 93A §§ 1, *et seq.*; (8) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1, *et seq.*; (9) violations of New York General Business Law §§ 349 and 350; (10) violations of North Carolina's Consumer Protection Statute ("NCCPS"), N.C. Gen. Stat. §§ 75-1.1, *et seq.*; (11) violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.*; and (12) violations of the Washington Consumer Protection Act ("WCPA"),

---

[1] Plaintiffs' claims for breach of express warranty, unjust enrichment, negligent misrepresentation, fraud, and the state consumer protection statutes (except New York's state consumer protection statute) are on behalf of a multistate class and the state subclasses. Plaintiffs' claims for violation of New York General Business Law §§ 349 and 350 are only on behalf of the New York subclass.

Wash. Rev. Code §§ 19.86.010, *et seq.* (SAC, ECF No. 61.) As relief, Plaintiffs seek both monetary damages and injunctive relief. (*Id.*)

On June 9, 2022, the parties filed a joint stipulation regarding the briefing schedule for Defendant's response to the Second Amended Complaint, which the Court subsequently granted. (ECF Nos. 63, 64.) On October 3, 2022, the parties filed their respective briefings on the instant motion: Defendant's notice of motion (ECF No. 71), memorandum in support ("Motion," ECF No. 72), and reply ("Reply," ECF No. 75); and Plaintiffs' response in opposition ("Response in Opposition," ECF No. 77.) In support of its Motion, Defendant also filed a request for judicial notice. (ECF No. 78.)

## II.    Factual Background

The following facts are drawn from Plaintiffs' SAC and are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant is a "global leader in the dietary supplement market, with sales of over $3 billion last year." (SAC ¶ 15.) Defendant "advertises, markets, distributes, and sells Osteo Bi-Flex to hundreds of thousands of consumers throughout the United States" via its online website and retailers, including Walgreens, Walmart, and Costco. *Id.* at ¶¶ 15–16. Plaintiffs place at issue four Osteo Bi-Flex products (collectively, the "Products"): "(1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Triple Strength MSM; and (4) Osteo Bi-Flex Triple Strength with Vitamin D." (*Id.* at ¶ 17.) The Products purport to provide various joint health benefits, as depicted below:


















Specifically, the Products claim to "Strengthen Joints," "Support Flexibility," "Support Mobility," "support[] joint comfort," and "help[] strengthen joints while helping to maintain joint cartilage essential for comfortable joint relief." (*Id.* at ¶ 25.) The main ingredient of the Products is "1,500 [milligrams] of glucosamine hydrochloride per serving." (SAC ¶ 18.) "Glucosamine hydrochloride," Plaintiffs allege, "is a combination of glucosamine (an amino sugar that is produced by the body in abundance) and hydrochloric acid." (SAC ¶ 19.) Market research and customer reviews and testimonials "show that consumers buy Osteo Bi-Flex to address their joint issues," "join pain[,] and other symptoms of osteoarthritis." (SAC ¶¶ 29–35.) Moreover, Plaintiffs allege that "Defendant's target audience are middle-age and older consumers with joint pain and stiffness indicative of pre- and early to mid-stage osteoarthritis." (*Id.* at ¶ 21.)

Plaintiffs are eight individuals from eight different states. Each Plaintiff purchased one of the Products from one or more retail stores (such as Rite Aid, Walgreens, Walmart, etc.) located in his or her respective state. (SAC ¶¶ 7–14.) Plaintiffs purchased the Products "for [] arthritis and arthritic symptoms of joint pain, joint discomfort, and joint stillness." (*Id.*) Plaintiffs allege Defendant's advertising and marketing of the Products is false, misleading, and deceptive because

Osteo Bi-Flex "does not maintain the structure or functions of anyone's joints." (SAC ¶ 38.) To support this argument, Plaintiffs assert that "a healthy joint does not and cannot use exogenous glucosamine or chondroitin," such as glucosamine from Osteo Bi-Flex products. (*Id.* at ¶¶ 39–40.) Plaintiffs further point to clinical studies that have "found no causal relationship between ingesting glucosamine and joint health." (*Id.* at ¶ 41.) Specifically, Plaintiffs cite the following studies in support of these allegations:

- An article by Kwoh et al. published in the journal Arthritis & Rheumatology titled "*Effect of Oral Glucosamine on Joint Structure in Individuals With Chronic Knee Pain*." (SAC ¶ 42) [hereinafter "Kwoh et al. (2014)"]. The study examined "a mix of subjects with and without osteoarthritis," and "concluded that oral glucosamine supplementation provided no joint health, structural, pain or function benefits." (*Id.*)

- An article by Runhaar et al. published in the American Journal of Medicine titled "*Prevention of Knee Osteoarthritis in Overweight Females: The First Preventative Randomized Controlled Trial in Osteoarthriti*s." (SAC ¶ 43) [hereinafter Runhaar et al. (2015)]. Researchers "examined subjects not diagnosed with arthritis . . . testing a diet-and-exercise program and 1500 mg oral glucosamine." (*Id.*) The study "examined the impact of daily glucosamine consumption on the incidence of knee osteoarthritis, as well as on pain and physical function." (*Id.*) The study concluded glucosamine had "no effect . . . on subjects' overall quality of life or knee pain, physical function, or the incidence of knee osteoarthritis." (*Id.*)

- An article by Eraslan and Ulkar (2015) published in the journal Research in Sports Medicine titled "*Glucosamine supplementation after anterior cruciate ligament reconstruction in athletes: a randomized placebo-controlled trial*." (SAC ¶ 44) [hereinafter

Eraslan and Ulkar (2015)]. The study "examined the impact of glucosamine versus placebo on knee pain, physical function (including range of motion) and muscular performance . . . in 30 athletes who did not have osteoarthritis." (*Id.*) The study concluded "[g]lucosamine was not effective in terms of any of the joint health parameters." (*Id.*)

- An article by Landsmeer et al. (2016) published in the journal Osteoarthritis and Cartilage titled "*Reducing progression of knee OA features assessed by MRI in overweight and obese women: secondary outcomes of a preventive RCT.*" (SAC ¶ 45) [hereinafter Landsmeer (2016)]. The study examined "middle-aged women without clinical signs of knee osteoarthritis, free inflammatory rheumatic diseases" and not receiving treatment for knee complaints for a two-and-a-half-year period. (*Id.*) Researchers "concluded that glucosamine did not show preventative effects of progression of any of the MRI features [of early osteoarthritis] under investigation." (*Id.*)

- An article by de Vos et al. published in the journal Rheumatology titled "*Long-term effects of a lifestyle intervention and oral glucosamine sulphate in primary care on incident knee OA in overweight women*." (SAC ¶ 46) [hereinafter de Vos et al. (2016)]. Researchers "determined the impact of glucosamine consumption over an average time period of 6.6 years." (*Id.*) The study "concluded that glucosamine consumption was not effective at preventing knee osteoarthritis . . . ." (*Id.*).

Plaintiffs further allege Defendant's business practices are deceptive and unfair because Defendant "target[s] and sell[s] Osteo Bi-Flex to consumers that cannot benefit from the product." (*Id.* at ¶ 48.) Although Defendant knew or should have known its products are ineffective at benefitting joint health, Plaintiffs contend, Defendant continued to target consumers with joint pain and arthritis through its advertising. (*Id.* at ¶ 53–55.) According to Plaintiffs, the targeted

consumers cannot benefit from Osteo Bi-Flex products, and those consumers, including Plaintiffs, would not have purchased the Products had they been made aware of that fact. (*Id.* at 57–59.)

Defendant seeks to dismiss Plaintiffs' SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on several grounds, but Defendant's principal arguments are: (1) Plaintiffs' claims are preempted by federal law and (2) Plaintiffs do not plausibly show Defendant's product labeling is false or misleading.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiffs assert claims against Defendant for (1) breach of express warranty; (2) unjust enrichment; (3) negligent misrepresentation; (4) fraud; and (5) violations of the consumer protection acts of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington. (SAC ¶¶ 72–220.) Defendant moves to dismiss all claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 71.) In the alternative, Defendant seeks an order dismissing Plaintiffs' request for injunctive relief pursuant to Rule 12(b)(1) for lack of Article III standing. (*Id.*) The Court agrees that Plaintiffs' state law claims are not preempted by federal law. However, for the reasons stated below, Defendant's motion to dismiss is granted as Plaintiffs have failed to allege any false statements or deceptive acts by Defendant.  As such, the Court does not reach any other ground for dismissal.

## I.   PREEMPTION

Defendant contends that Plaintiffs' state law claims are preempted by the federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"), which precludes states from imposing labeling requirements on dietary supplements that are inconsistent with those imposed by the FDCA. (Mot. at 14–16.) Defendant reasons that the FDCA preempts Plaintiffs' state law claims because Plaintiffs' allegations that the Products do not treat or prevent disease or benefit consumers' health "do not 'match' what federal law requires for substantiation."[2] (Mot. at 6.)

---

[2] As discussed in the parties' briefings, the Ninth Circuit reversed the district court's decision granting summary judgment in favor of the defendant in *Seegert v. Rexall Sundown, Inc.*, No. 20-55486, 2022 WL 301553 (9th Cir. Feb. 1, 2022). In that case, the plaintiff similarly claimed Osteo Bi-Flex, as manufactured by the defendant, did not provide any purported joint health benefits in violation of California's Unfair Competition Law and Consumer Legal Remedies Act. *Id.* at *1. The Ninth Circuit affirmed the district court's finding that defendant's representations are structure/function claims. However, the circuit court reversed the district court's decision to assess whether (1) plaintiff's evidence is admissible and (2) there is a triable issue on substantiation. *Id.* at *3.

Because a defendant asserting preemption bears the burden of proving that it applies, the Court will determine whether Defendant carries its burden. *See Bruesewitz v. Wyeth LLC,* 562 U.S. 223, 251 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.") (citations omitted). After due consideration, the Court concludes that Defendant has failed to do so.

Under the Supremacy Clause of the Constitution, state laws are invalid if they "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution." *Gibbons v. Ogden,* 22 U.S. 1, 211 (1824). Federal law can preempt state law if Congress expresses its intent to preempt the law through explicit statutory language ("express preemption") or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption") or directly conflicts with federal law ("conflict preemption"). *See N.Y. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir. 2005). Here, only express preemption is at issue.

Where a statute includes an express preemption clause, "[the court] do[es] not invoke any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citing *Chamber of Commerce of United States of America v. Whiting*, 563 U.S. 582, 594 (2011)); *see also Canale v. Colgate-Palmolive Co.*, 258 F.Supp.3d 312, 319–20 (S.D.N.Y. 2017) ("where . . . Congress has expressly manifested its intent to preempt state law, no presumption against preemption arises"). The NLEA added an express preemption provision to the FDCA. It states, in relevant part:

Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce

...

(5) any requirement respecting any claim of the type described in section 343(r)(1) of this title [i.e., nutrition levels and health-related claims], made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title . . . .

21 U.S.C. § 343–1(a)(5) ("Section 403A").

Section 403A preempts any state requirement that differs from the FDCA's regulation in Section 343(r)(1). Plaintiffs may escape preemption under that provision: "(1) if their claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) the requirements plaintiffs seek to impose are not with respect to claims of the sort described in Section 343(r)(1)." *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013).

Section 343(r)(1) of the NLEA defines "nutrition levels and health-related claims" in the labeling of food as those that "expressly or by implication," "characterize[ ] the level of any nutrient" or "characterize[ ] the relationship of any nutrient . . . to a disease or health related condition . . . ." 21 U.S.C. § 343(r)(1). Under Section 343(r)(6), labels of dietary supplements are included as one of those claims. *See* § 343(r)(1)(B).

In arguing that Plaintiffs' claims are preempted, Defendant focuses on the distinction between product labels making structure/function claims versus those making disease-related claims. (Mot. at 11–20.) This analysis is misplaced. Plaintiffs do not assert that Defendant failed to adhere to the labelling requirements imposed by the FDCA. Rather, Plaintiffs' argument is that the representations Defendant has made about its Products are false and misleading. Therefore,

Plaintiffs do not attempt to impose any additional requirements on Defendant other than those already imposed by the statute, and instead allege that Defendant's Products do not and cannot provide the joint health benefits advertised on their labels. *See Bardsley v. Nonni's Foods LLC*, No. 20 CIV. 2979 (NSR), 2022 WL 814034, at *11 (S.D.N.Y. Mar. 16, 2022) (finding the plaintiff's consumer protection claims under state law were not preempted by the FDCA). Plaintiffs' allegations that Defendant "misrepresented the effectiveness of its products is a traditional claim of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements." *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *4 (E.D.N.Y. Sept. 27, 2013) (citations omitted). Accordingly, Plaintiffs' state law claims are not preempted by the FDCA.

## II.   STATE CONSUMER PROTECTION ACTS

### a.   False, Misleading, or Deceptive Representations

Plaintiffs assert causes of action under the consumer protection statutes of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington (SAC ¶¶ 107-220.) While these statutes are not identical, they generally require a plaintiff to show that a reasonable consumer is likely to be injured by a defendant's deceptive acts or false or misleading statements. *See Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citing *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla.Dist.Ct.App.2000)) (FDUTPA requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying consumer."); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (IDPCFA requires "plausibly alleg[ing] that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the black labels belie."); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020) (Under

the MCPA, "an act or practice is deceptive if it possesses a tendency to deceive . . . .") (citations and internal quotations omitted); *Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426 (D.N.J. 2015) (citing *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 390 A.2d 566, 569 (1978)) (describing the NJCFA as designed to protect consumers from being "lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.") (internal citations omitted); *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)) (A claim under both §§ 349 and 350 require that "defendant engaged in deceptive or materially misleading acts or practices."); *Streber v. Hunter*, 221 F.3d 701, 728 (5th Cir. 2000) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995)) (Under the TDTPA, "an act is false, misleading, or deceptive if it has the capacity to deceive an 'ignorant, unthinking, or credulous person.'"); *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 457 (4th Cir. 2010) (citing *Walker v. Fleetwood Homes of NC, Inc.*, 362 N.C. 63, 653 S.E.2d 393, 399 (2007)) (A claim under the NCCPS requires "an unfair or deceptive act or practice or an unfair method of competition."); *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1097 (W.D. Wash. 2013) (citing *Sing v. John L. Scott, Inc.*, 134 Wash.2d 24, 30, 948 P.2d 816 (1997); *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wash.App. 210, 226, 135 P.3d 499 (2006)) ("[A] deceptive act [under the WCPA] must have capacity to deceive a substantial portion of the population," and "misleads or represents something of material importance.").

Plaintiffs assert that Defendant's marketing and advertising of the Products is false and misleading because Osteo Bi-Flex "does not benefit the 'Joint Health' of a healthy (or diseased) joint, it does not help with 'Range of Motion,' will not 'Strengthen Joints,' 'Support Flexibility,' 'Support Mobility,' 'supports joint comfort,' 'defend your joints,' and does not 'help strengthen

joints while helping to maintain joint cartilage essential for comfortable joint movement.'" (SAC ¶ 38.) Defendant argues Plaintiffs fail to advance a plausible theory of deception by alleging that scientific studies show that some ingredients in the Products do not benefit joint health. (Mot. at 20). The Court agrees with Defendant.

Plaintiffs raise two arguments to refute Defendant's claims regarding the health benefits of its Products: (1) "[a] healthy joint does not need and cannot use exogenous glucosamine or chondroitin" because ingesting glucosamine cannot "help cartilage in joints repair and maintain itself" and (2) "[c]linical studies have also found no causal relationship between ingesting glucosamine and joint health." (SAC ¶¶ 39–41.) "Where a plaintiff has chosen to use scientific studies in an effort to raise plausible inferences that marketing is deceptive, and the studies cited do not support her claims, the plaintiff has not plausibly pleaded her claims." *Bermudez v. Colgate-Palmolive Co.*, No. 1:21-CV-10988 (JLR), 2023 WL 2751044, at *8 (S.D.N.Y. Mar. 31, 2023) (citing *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015)).

Here, Plaintiffs contend scientific studies prove that exogenous glucosamine or chondroitin cannot help repair and maintain cartilage in joints, therefore supporting their assertion that the Products do not provide the purported joint health benefits. Other than this conclusory statement, Plaintiffs fail to cite to any of these supposed studies. Therefore, Plaintiffs have failed to "provide a sufficient factual basis in support of such a contention." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 457 (E.D.N.Y. 2013); *c.f. Quinn v. Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543–44 (S.D.N.Y. 2013) (finding plaintiffs plausibly alleged claims under state consumer protection statutes because they "cite to numerous scientific studies" supporting that glucosamine and chondroitin products cannot rebuild or reverse the deterioration of cartilage). Without sufficient

factual basis for their claims, Plaintiffs have not plausibly alleged that the Products do not improve joint health.

In support of their second argument, Plaintiffs cite five clinical studies to show Defendant's claims about its Products are false and deceptive. Two examined the effects of orally administered glucosamine on the prevention of osteoarthritis: Landsmeer et al. (2016) concluded that "glucosamine did not show *preventative* effects on progression of any of the MRI features [of early osteoarthritis] under investigation," and de Vos et al. concluded that glucosamine consumption is "not effective at *preventing* knee osteoarthritis . . . ." (SAC ¶¶ 45, 46) (emphasis added). At the outset, these studies are irrelevant to the health claims of the Products. Nothing from the advertising or marketing of the Products, including the labels on the Products themselves, convey that the Products will treat, cure, or prevent osteoarthritis. *See supra* Section II. It is not plausible that studies about the effects of glucosamine on the progression of a degenerative bone disease support allegations that Defendant's Products do not provide general joint health benefits.

The other three studies authored by Kwoh et al. (2014), Runhaar et al. (2015), and Eraslan A & Ulkar B (2015) "found no causal relationship between ingesting glucosamine and joint health." (SAC ¶ 40.) Specifically, Kwoh et al. (2014) "concluded that oral glucosamine supplementation provided no joint health, structural, pain or function benefits" (SAC ¶ 42); Runhaar et al. (2015) found glucosamine did not impact "subject's quality of life or knee pain, [or] physical function . . . " (SAC ¶ 43); and Eraslan A and Ulkar B (2015) found "no significant differences regarding pain [], function status [] and muscular strength [] between the glucosamine and placebo groups." (SAC ¶ 44.) The results of these three clinical studies are more directly linked to the claims made about the Products' purported health benefits. (*See* Mot. at 20–23.) The Court, however, still concludes Plaintiffs have not plausibly alleged the Products are "deceptive" in that

they do not "support joint comfort, flexibility, and mobility." The scientific studies cited in support of Plaintiffs' contention prove the effectiveness of *one* of the Products' ingredients for a few categories of individuals. Accordingly, the Court must grant Defendant's motion to dismiss.

First, the Court must consider the subjects of these clinical studies: individuals with and without osteoarthritis with chronic knee pain (Kwoh et al. (2014)); athletes (Eraslan A & Ulkar B (2015)); overweight and obese women (Landsmeer et al. (2016)); and overweight women in (Runhaar et al. (2015); de Vos et al. (2017)). (SAC ¶¶ 42, 44–46.) The Products do not purport to improve the joint health of only certain groups of individuals, rather "Defendant conveys to consumers that its Osteo Bi-Flex will improve the joint health of all persons who consume it." (SAC ¶ 22.) Therefore, while Plaintiffs have found support that the Products do not provide joint health benefits to consumers with chronic knee pain, athletes, or those who are overweight or obese, Plaintiffs have not shown that the Products "do[] not maintain the structure or function of anyone's joints." (SAC ¶ 38.) Scientific findings relating to these specific groups of individuals cannot be generalized to plausibly refute the overall effectiveness of the Products' broad health claims. *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 137–38 (E.D.N.Y. 2015) ("[W]here plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about [the product's] benefits is fatal to plaintiffs' complaint.") (citations omitted).

Moreover, glucosamine hydrochloride is not the sole ingredient in the formulations of the Products. (*See* FAC, Exhibit A). All the Products also include Joint Shield™ 5-LOXIN Advanced®, a "proprietary ingredient." (Mot. at 9) (citing *Seegert*, 2022 WL 301553, at *1). Osteo Bi-Flex Triple Strength also contains 1.1 grams of the active ingredient chondroitin/MSM Complex; Osteo Bi-Flex Triple Strength MSM contains 1.5 grams of methylsufonylmethane

(MSM); and Osteo Bi-Flex Triple Strength with Vitamin D contains 275 milligrams of chondroitin/MSM Complex. (*Id.*) The amount of these additional ingredients in Osteo Bi-Flex Triple Strength and Osteo Bi-Flex Triple Strength MSM are equal to or only slightly less than the 1.5 grams of glucosamine hydrochloride found in the Products. (*Id.*) The clinical studies cited by Plaintiffs examine glucosamine or glucosamine hydrochloride, not the proprietary ingredient or the combination of ingredients found in the Products. A plausible inference cannot be drawn between the scientific findings about the effect of glucosamine or glucosamine hydrochloride and the purported joint health benefits of dietary supplements that contain several active ingredients in varying formulations.

The scientific findings Plaintiffs cite in their SAC fail to disprove the claims made by Defendant about the Products joint health benefits. Plaintiffs have not proffered clinical studies that prove the Products—which are comprised of glucosamine hydrochloride, other active ingredients, and a proprietary ingredient—do not provide joint health benefits to consumers. Plaintiffs thus cannot plausibly allege that the claims related to the Products' joint health benefits are false, misleading, or deceptive. Plaintiffs fail to bridge the gap to push claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The Court would also like to note the difference between substantiation and falsity in cases where a plaintiff alleges false and misleading advertising. In addition to relying on the cited studies, Plaintiffs also argue that Defendant cannot substantiate its claims using evidence "related to the structure and function of healthy joints," but instead "is forced to cite to studies examining subjects with osteoarthritis on the Osteo Bi-Flex packaging." (Response in Opposition at 14.) "If [p]laintiff is going to maintain an action against [d]efendant for false or misleading advertising, then [p]laintiff will be required to adduce evidence sufficient to present to a jury to show that

[d]efendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence." *Hughes*, 930 F. Supp. 2d at 456 (citation omitted).

### b. Unfair Business Practices

Finally, Plaintiffs allege that Defendant's business practices are unfair. Although "Defendant knows Osteo Bi-Flex is ineffective in reducing or treating joint pain and other symptoms of osteoarthritis," Plaintiffs assert, Defendant targets consumers with joint pain and other symptoms of osteoarthritis. (SAC ¶ 48.) For the same reasons as discussed above, Plaintiffs' unfair business practices claims also fail.

In addition to protecting consumers from false, deceptive, or misleading business acts or practices, the consumer protection statutes of Florida, Illinois, Massachusetts, North Carolina, and Washington further protect consumers from unfair business acts or practices. These statutes generally require that a practice is either offensive to public policy or "immoral, unethical, oppressive, or unscrupulous." *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting *Spiegel, Inc. v. Fed. Trade Comm'n,* 540 F.2d 287, 293 (7th Cir.1976)) ("An unfair practice is one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002)) (conduct is unfair under the IDPCFA if "the practice offends public policy" or "is immoral, unethical, oppressive, or unscrupulous"); *Tomasella*, 962 F.3d at 69 (citing *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 573 N.E.2d 8, 12-13 (1991)) (a claim for unfair conduct under the MCPA requires "immoral, unethical, oppressive, or unscrupulous" omissions) (cleaned up); *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 280 (4th Cir. 2012) (citing *Marshall v. Miller*,

302 N.C. 539, 276 S.E.2d 397, 403 (1981)) ("An act is unfair when it is unethical or unscrupulous. . . ."); *Hunter v. Bank of Am., N.A.*, No. 2:16-CV-01718-RAJ, 2021 WL 928176, at *5 (W.D. Wash. Mar. 11, 2021), *reconsideration denied*, No. 2:16-CV-01718-RAJ, 2022 WL 59683 (W.D. Wash. Jan. 6, 2022) (quoting *Mellon v. Reg'l Tr. Servs. Corp.*, 182 Wash. App. 476, 334 P.3d 1120, 1126 (2014)) ("[A] defendant's act or practice might be unfair if it offends public policy . . . , or is unethical, oppressive, or unscrupulous, among other things.").

Here, as discussed above, Plaintiffs have failed to plausibly allege that Defendant's claims that its Products reduce or treat joint pain are false or misleading. Defendant's advertising and marketing of the Products thus is not offensive to public policy or "immoral, unethical oppressive, or unscrupulous." Plaintiffs therefore do not meet their burden to show that the marketing and advertising of Defendant's Products is unfair. *See La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 517 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) (finding defendant's business practices are not "unfair" under the MCPA where the product packaging would not deceive a reasonable consumer).

## III.   STATE COMMON LAW CLAIMS

Similarly, if Plaintiffs cannot plausibly allege Defendant's claims about the health benefits of the Products are false, deceptive, or misleading, then Plaintiffs' common law claims must also fail. Claims for breach of express warranty, unjust enrichment, negligent misrepresentation, and fraud, "which largely hinge on the core theory of consumer deception," require that Plaintiffs allege Defendant made material misrepresentations of fact or omissions. *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *5 (S.D.N.Y. Mar. 1, 2022).

As discussed above, the Court has already determined Plaintiffs have materially failed to allege Defendant's representations about the Products are false, misleading, or deceptive because

Plaintiffs have not plausibly alleged that the Products do not provide the purported joint health benefits to consumers. The Court thus dismisses the state common law claims for the reasons already stated.

      **a. Express Warranty**

Generally, a breach of express warranty claim requires the following elements: (1) a fact, promise, or description of the product; (2) reliance by the buyer; and (3) a breach by the seller. *See, e.g.*, *Avola v. La.-Pac. Corp.*, No. 11-CV-4053 (PKC), 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013) (quoting N.Y. U.C.C. § 2-313(1)(a)) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").  For the reasons stated below, Plaintiffs' express warranty claims are dismissed.

Under the laws of the eight states at issue, a breach for express warranty generally requires that the buyer made a false or misleading representation to the seller. *See Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1318 (S.D. Fla. 2017) (claims for a breach of express warranty requires finding product labels are "false, deceptive, or misleading"); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962, at *4 (N.D. Ill. Oct. 14, 2016) (citing *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057 (Ill. 2007)) (a claim for breach of express warranty "require[s] a misleading statement of some kind."); *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 12 (D. Mass. 2022) (citations omitted) (asserting a claim for breach of express warranty requires showing defendant failed to deliver on a promise); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing *New Hope Pipe Liners*, 2009 U.S. Dist. LEXIS 111217, at *15; N.J. Stat. Ann. § 12A:2–313) (a claim for breach of express warranty requires that that the product ultimately did not conform to the affirmation, promise, or

description); *DiBartolo v. Abbott Lab'ys.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (quoting *Weiner v. Snapple Beverage Corp.*, No. 07-cv-08742, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011)) (a claim for breach of express warranty requires an affirmation of fact or promise, which "must have been 'false or misleading when made.'"); *Ray v. Samsung Elecs. Am., Inc.*, No. 15CV8540 (DLC), 2016 WL 3406127, at *5 (S.D.N.Y. June 17, 2016) (citing *Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc.*, 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010)) (requiring a breach of the express warranty); *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *13 (S.D. Tex. Sept. 20, 2019) (citing *Minsa Corp. v. SFTC, LLC*, 540 S.W.3d 155, 161 (Tex. App.— Amarillo 2017, no pet.)) (breach of express warranty claims require that the goods purchased from the seller "failed to comply with the affirmation of fact or promise made by the seller"); *Kerzman v. NCH Corp.*, No. C05-1820JLR, 2007 WL 765202, at *6 (W.D. Wash. Mar. 9, 2007) (citing RCW § 7.72.030(2)(b)) (a claim for breach of express warranty requires a warranty "turns out to be untrue.").

Here, Plaintiffs fail to plausibly allege that Defendant's representations about the Products are false or misleading, and thus Plaintiffs have not plead a plausible claim for breach of express warranty.

### b.  Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must generally allege that defendant retained a benefit and retention of that benefit was unjust. *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-CV-2672-T-23TBM, 2018 WL 1565453, at *3 (M.D. Fla. Mar. 30, 2018) (citing *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994)) (permitting "an action for money had an received . . . where money has been received and obtained through fraud, imposition, extortion, or undue advantage"); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D.

Ill. 2015) (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 200)) ("Absent a plausible allegation of deception, the claim for unjust enrichment must fail."); *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 362 (S.D.N.Y. 2021) (citing *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020)) (finding unjust enrichment claim fails where plaintiff failed to plausibly allege the product label was false or misleading); *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *8 (D. Mass. Feb. 1, 2016), *aff'd*, 865 F.3d 17 (1st Cir. 2017*) (citing *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009)) (a claim for unjust enrichment requires defendant "retained a benefit that would be inequitable without payment for its value"); *Hammer v. Vital Pharms., Inc.*, No. CIV.A. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012) (citing *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554, 641 A.2d 519 (1994)) (unjust enrichment requires defendant's "retention of that benefit without payment would be unjust"); *Gilliam v. JPMorgan Chase Bank*, N.A., No. CV H-18-2698, 2019 WL 2648017, at *7 (S.D. Tex. June 27, 2019) (citing *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.)) ("Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."); *Barchiesi v. Charlotte Sch. of L., LLC*, No. 3:16-CV-00861, 2017 WL 3573823, at *5 (W.D.N.C. Aug. 17, 2017) ("[A] claim for unjust enrichment must plausibly allege that the enrichment was in fact 'unjust.'"); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 2276 (W.D. Wash. 2014), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017) (citing *Young v. Young*, 164 Wash.2d 477, 484, 191 P.3d 1258 (2008)) (unjust enrichment requires defendant "unequitabl[y]" retaining a benefit without payment of its value).

As discussed above, Plaintiffs failed to plausibly allege that Defendant made misrepresentations or deceived consumers about the joint health benefits of the Products. Accordingly, the Court dismisses Plaintiffs' unjust enrichment claims.

### c. Fraud and Negligent Misrepresentation

Generally, claims for negligent misrepresentation and fraud require a false or misleading statement of material fact. *See Owl Creek I, L.P. v. Ocwen Fin. Corp.*, No. 18-80506-CIV, 2018 WL 4844019, at *5 (S.D. Fla. Oct. 4, 2018) (citing *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, No. 16-80056-CIV-WPD, 2016 WL 9413421, at *3 (S.D. Fla. June 29, 2016)) (negligent misrepresentation requires that "defendant made a misrepresentation of material fact"); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962, at *4 (N.D. Ill. Oct. 14, 2016) (citing *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 889 (Ill. 2012)) (same); *Corrigan v. Covidien LP*, No. 22-CV-10220, 2022 WL 17094687, at *6 (D. Mass. Nov. 21, 2022) (citing *DeWolfe v. Hingham Ctr., Ltd.*, 464 Mass. 795, 799–800 (2013)) (same); *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016) (same); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *23 (E.D.N.Y. Sept. 22, 2015) (citing *Anschutz Corp. v. Merrill Lynch & Co.,* 690 F.3d 98, 114 (2d Cir.2012)) (same); *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07CV140, 2010 WL 2294323, at *6 (W.D.N.C. June 4, 2010) (citing *Jordan v. Earthgrains Cos., Inc.,* 576 S.E.2d 336, 339 (N.C.Ct.App.2003)) (same); *Direct Processing Sols., LLC v. Paychex, Inc*, No. 3:12-CV-01073-P, 2012 WL 12888563, at *5 (N.D. Tex. July 31, 2012) (same); *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB`, 2006 WL 1418906, at *2 (W.D. Wash. May 22, 2006) (same).

Similarly, "[i]t is well-established that the hallmarks of fraud are misrepresentation or deceit." *Kruskall v. Sallie Mae Serv., Inc.*, No. 15-CV-11780, 2016 WL 1056973, at *5 (D. Mass.

Mar. 14, 2016) (citing *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 215 F.3d 182, 191 (1st Cir. 2000)); *see also Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-81251-CIV, 2019 WL 7837361, at *4 (S.D. Fla. May 22, 2019) (citing *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 829 (S.D. Fla. 1996)) (fraud requires "a false statement of material fact"); *Sneed v. Ferrero U.S.A., Inc.*, No. 22 CV 1183, 2023 WL 2019049, at *5 (N.D. Ill. Feb. 15, 2023) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996)) (same); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 726 (M.D.N.C. 2015) (citing *Forbis v. Neal*, 361 N.C. 519, 649 S.E.2d 382, 387 (2007)) (same); *Virginia Sur. Co. v. Macedo*, No. CIV.A. 08-5586 GEB, 2011 WL 1769858 at *17 (D.N.J. May 6, 2011) (citing *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172–73, 876 A.2d 253 (2005)) (same); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022) (same); *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 390 (W.D. Tex. 2023) (same); *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB`, 2006 WL 1418906, at *2 (W.D. Wash. May 22, 2006) (same).

As discussed above, the Court finds that Plaintiffs have failed to allege a material misrepresentation of fact or omission because Plaintiffs have not plausibly alleged that Defendant's Products do not provide joint health benefits. Accordingly, Plaintiffs' fraud and negligent misrepresentation claims fail.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. Plaintiffs' claims are dismissed without prejudice.

Plaintiffs are granted leave to file a Third Amended Complaint. If Plaintiffs choose to do so, Plaintiffs shall file the Third Amended Complaint no later than December 1, 2023.  Defendant

is then directed to answer or otherwise seek leave to move in response to the Third Amended Complaint no later than December 18, 2023.  Failure to timely amend will result in claims previously dismissed without prejudice being deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 71.

Dated:    October 31, 2023                                   SO ORDERED:

White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge