```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROL WHYBLE, ANTHONY BROWN, REBECCA CARRANZA, SUE DEMELE, SHERRY GREENE, RENEE RANDALL, BRENDA TUCKER, and CHARLES GEOFFREY WOODS, *individually and on behalf of all others similarly situated*,

            Plaintiffs,

-against-

THE NATURE'S BOUNTY CO.,

           Defendant.

No. 20 Civ. 3257 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Carol Whyble, Anthony Brown, Rebecca Carranza, Sue Demele, Sherry Greene, Renee Randall, Brenda Tucker, and Charles Geoffrey Woods (collectively, "Plaintiffs") bring this putative class action against Defendant The Nature's Bounty Co. ("Defendant" or "Nature's Bounty") alleging false and misleading advertising and marketing of Defendant's Osteo Bi-Flex products (hereinafter "OBF" or the "Products"). Specifically, Plaintiffs bring claims for breach of warranty, unjust enrichment, negligent misrepresentation, and fraud, as well as violations of the consumer protection statutes of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington. Before this Court is Defendant's motion to dismiss Plaintiffs' Third Amended Complaint pursuant to the Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

### I. Procedural Background

On April 24, 2020, Plaintiff Carol Whyble filed the original class action Complaint. (Compl., ECF No. 1.) On June 25, 2020, before Defendant had filed an answer or otherwise

responsive pleading, Plaintiff Whyble filed the First Amended Complaint adding seven new plaintiffs. ("FAC," ECF No. 6.) On January 8, 2021, Defendant filed a motion to stay pending the Ninth Circuit's decision in *Seegert v. Rexall Sundown, Inc.*, No 20-55486, 2022 WL 301553 (9th Cir.), or in the alternative, a motion to dismiss. (ECF No. 31.) On January 5, 2022, this Court granted Defendant's request to stay and denied Defendant's motion to dismiss. (ECF No. 48.) On February 2, 2022, Plaintiffs notified the Court of the Ninth Circuit's decision in *Seegert*, and the Court lifted the stay on April 5, 2022. (ECF Nos. 49, 55.)

On May 27, 2022, Plaintiffs filed their Second Amended Complaint ("SAC") on behalf of a multistate class of all individuals who purchased OBF in the United States (the "multistate class") as well as subclasses of individuals who purchased the Products in eight states (the "state subclasses"), asserting claims for[1]: (1) breach of express warranty; (2) unjust enrichment; (3) negligent misrepresentation; (4) fraud; (5) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (6) violations of the Illinois Deceptive Practices and Consumer Fraud Act ("IDPCFA"), 815 ILCS 505/2; (7) violations of Massachusetts' Consumer Protection Act ("MCPA"), Mass. Gen. Laws 93A §§ 1, *et seq.*; (8) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1, *et seq.*; (9) violations of New York General Business Law §§ 349 and 350; (10) violations of North Carolina's Consumer Protection Statute ("NCCPS"), N.C. Gen. Stat. §§ 75-1.1, *et seq.*; (11) violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.*; and (12) violations of the Washington Consumer Protection Act ("WCPA"), Wash.

---

[1] Plaintiffs' claims for breach of express warranty, unjust enrichment, negligent misrepresentation, fraud, and the state consumer protection statutes (except New York's state consumer protection statute) are on behalf of a multistate class and the state subclasses. Plaintiffs' claims for violation of New York General Business Law §§ 349 and 350 are only on behalf of the New York subclass.

2

Rev. Code §§ 19.86.010, *et seq.* (SAC, ECF No. 61.) As relief, Plaintiffs seek both monetary damages and injunctive relief. (*Id.*)

On October 3, 2022, the parties filed their respective briefings related to the motion to dismiss the SAC. On October 31, 2023, the Court issued its decision granting Defendant's motion to dismiss the SAC without prejudice. In its October 31, 2023 decision ("*Whyble I*"), the court held that the SAC failed to (1) cite studies that established that a healthy joint does not need and cannot use exogenous glucosamine or chondroitin; and (2) provide studies that support allegations that Nature Bounty's products do not provide general joint health benefits.

On December 1, 2023, Plaintiffs filed the Third Amended Complaint ("TAC"). (ECF No. 86.) On March 29, 2024, Defendant filed a motion to dismiss the TAC (the "Motion"). (ECF No. 95.) On the same day, Defendant also filed a memorandum of law in support ("MoL") (ECF No. 96) as well as a reply memorandum of law (the "Reply"). (ECF No. 102.) In response, Plaintiffs filed a memorandum of law in opposition (the "Opp"). (ECF No. 99.) On August 26, 2024, Plaintiffs furnished the Court with a notice of supplemental authority related to a recent decision in the Ninth Circuit Court of Appeals: *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024). (ECF No. 105.) On August 30, 2024, Defendant filed their response to Plaintiffs' notice of supplemental authority. (ECF No. 107.) Defendant also filed their own notice of supplemental authority related to a recent decision in the Second Circuit Court of Appeals: *Jackson-Mau v. Walgreen Co.*, 115 F.4th 121 (2d Cir. 2024). (ECF No. 106.)

II.  **Factual Background**

Defendant markets, sells, and distributes a joint health supplement named "Osteo Bi-Flex" ("OBF"). (TAC at ¶ 2.) Plaintiffs place at issue four OBF products: "(1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Triple Strength MSM; and (4) Osteo

Bi-Flex Triple Strength with Vitamin D." (*Id.* at ¶ 17.) The Products purport to provide various joint health benefits, as depicted below:

   

   

4





Specifically, the Products claim to "Strengthen Joints," "Support Flexibility," "Support Mobility," "support[] joint comfort," and "help[] strengthen joints while helping to maintain joint cartilage essential for comfortable joint relief." (*Id.* at ¶ 38.) The main ingredient of the Products is "1,500 [milligrams] of glucosamine hydrochloride per serving." (*Id*. at ¶¶ 18-20.) "Glucosamine hydrochloride," Plaintiffs allege, "is a combination of glucosamine (an amino sugar that is produced by the body in abundance) and hydrochloric acid." (*Id*. at ¶ 20.) Plaintiffs allege that

5

OBF communicates to consumers that it will improve joint health to all who use it. (*Id*. at ¶¶ 31-33.)

Plaintiffs are eight individuals from eight different states who purchased at least one of the Products from a store located in his or her respective state. (*Id*. at ¶¶ 7-14.) Plaintiffs purchased the Products "for [] arthritis and arthritic symptoms of joint pain, joint discomfort, and joint stillness." (*Id.*) Plaintiffs allege Defendant's advertising and marketing of the Products is false, misleading, and deceptive because OBF does nothing for joints, joint health, or osteoarthritis, as advertised. (*Id*. at ¶¶ 65-66, 71-185.) In support of their argument, Plaintiffs cite to dozens of studies that they allege prove that OBF lacks any medical efficacy with respect to general joint physiology and joint pain, stiffness, mobility, flexibility, strength, physical function. (*Id*.)

Plaintiffs further allege Defendant's business practices are deceptive and unfair because Defendant "target[s] and sell[s] Osteo Bi-flex to consumers that cannot benefit from the product." (*Id.* at ¶¶ 58-186.) Plaintiffs allege that Defendant utilized world class market research to target consumers who suffered from osteoarthritis and were looking for solutions to recurring joint pain and stiffness despite OBF being ineffective for these purposes. (*Id*. at ¶¶ 30, 50, 53, 55, 69.)

Defendant seeks to dismiss Plaintiffs' TAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant claims that Plaintiffs have failed to cure the deficiencies of the SAC—namely, (1) Plaintiffs' cited studies do not test OBF's combined proprietary blend but only provides studies of the individual ingredients and not in the same quantities as they appear in OBF, and (2) the cited studies do not prove falsity because the studies focus on osteoarthritis treatment, which OBF does not purport to treat.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Plaintiffs assert claims against Defendant for (1) breach of express warranty; (2) unjust enrichment; (3) negligent misrepresentation; (4) fraud; and (5) violations of the consumer protection acts of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington. Defendant moves to dismiss all claims for failure to state a claim pursuant to Rule 12(b)(6). In the alternative, Defendant seeks an order dismissing Plaintiffs' request for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. For the reasons stated below, Defendant's motion to dismiss is GRANTED as Plaintiffs

have failed to allege any false statements or deceptive acts by Defendant. As such, the Court does not reach any other ground for dismissal.

I. **PREEMPTION**

Defendant contends that Plaintiffs' state law claims are preempted by the federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"), which precludes states from imposing labeling requirements on dietary supplements that are inconsistent with those imposed by the FDCA. Defendant reasons that the FDCA preempts Plaintiffs' state law claims because Plaintiffs' allegations that the Products do not treat or prevent disease or benefit consumers' health "do not 'match' what federal law requires for substantiation."[2] The Court previously addressed the parties' preemption arguments in *Whyble I*. The parties' arguments remain unchanged, and the Court relies on that same analysis here in finding that Plaintiffs' claims are not preempted by state law. Specifically, the Court finds (again) that because Plaintiffs do not assert that Defendant failed to adhere to labeling requirements imposed by the FDCA, and only make the claim that Defendant made false and misleading representations related to its products, which are traditional consumer misrepresentation claims, they are not preempted by the FDCA. *See Whyble v. Nature's Bounty Co.*, No. 20 CIV. 3257 (NSR), 2023 WL 7165934, at *4-5 (S.D.N.Y. Oct. 31, 2023).

---

[2] As discussed in the parties' briefings, the Ninth Circuit reversed the district court's decision granting summary judgment in favor of the defendant in *Seegert v. Rexall Sundown, Inc.*, No. 20-55486, 2022 WL 301553 (9th Cir. Feb. 1, 2022). In that case, the plaintiff similarly claimed Osteo Bi-Flex, as manufactured by the defendant, did not provide any purported joint health benefits in violation of California's Unfair Competition Law and Consumer Legal Remedies Act. *Id.* at *1. The Ninth Circuit affirmed the district court's finding that defendant's representations are structure/function claims. However, the circuit court reversed the district court's decision to assess whether (1) plaintiff's evidence is admissible and (2) there is a triable issue on substantiation. *Id.* at *3.

## II. STATE CONSUMER PROTECTION ACTS

### a. False, Misleading, or Deceptive Representations

Plaintiffs assert causes of action under the consumer protection statutes of Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Texas, and Washington. As the Court noted in *Whyble I*, these statutes are not identical, but they generally require a plaintiff to show that a reasonable consumer is likely to be injured by a defendant's deceptive acts or false or misleading statements. 2023 WL 7165934, at *6 (collecting cases).

And again, as in *Whyble I*, Plaintiffs assert that Defendant's marketing and advertising of the Products is false and misleading because OBF "does not benefit the 'Joint Health' of a healthy (or diseased) joint, it does not help with 'Range of Motion,' will not 'Strengthen Joints,' 'Support Flexibility,' 'Support Mobility,' 'supports joint comfort,' 'defend your joints,' and does not 'help strengthen joints while helping to maintain joint cartilage essential for comfortable joint movement.'" (TAC ¶ 38.) Plaintiffs contend that the cited studies show that exogenous glucosamine and chondroitin—two of the main ingredients in OBF—cannot help repair and maintain cartilage in joints. In *Whyble I*, the Court concluded that Plaintiffs' argument on this point had "failed to provide a sufficient factual basis in support of [its] contention" because Plaintiffs failed to specifically cite to any of the relevant studies in the SAC. 2023 WL 7165934 at *6. Moreover, of the studies that Plaintiffs *did* cite, the Court found that those studies were irrelevant. The cited studies in *Whyble I* all focused on the prevention or treatment of osteoarthritis, which the Court determined had no bearing on a product that did not purport to treat, cure, or prevent osteoarthritis. On this, the Court concluded that "it [was] not plausible that studies about the effects of glucosamine on the progression of a degenerative bone disease support allegations that Defendant's Products do not provide general joint health benefits." *Id*. at 7.

9

Here, Plaintiffs have added dozens of studies to the TAC that they assert shore up the deficiencies that the Court identified in *Whyble I*. Unfortunately, it appears that Plaintiffs focused more on quantity than quality. The studies cited in the TAC suffer from the same deficiencies as the SAC. First, the vast majority of the studies cited focus on individual ingredients in isolation and do not test their efficacy when in combination. In *Whyble I*, the Court noted this same deficiency. "The clinical studies cited by Plaintiffs examine glucosamine or glucosamine hydrochloride, not the proprietary ingredient *or the combination of ingredients* found in the Products." *Id*. (emphasis added). Plaintiffs contend in their papers that they did cite at least one study that tested OBF's ingredients in combination, though it remains unclear if the study tested the same ingredients in the same quantities as OBF. In any event, Plaintiffs point the Court to Magrans-Courtney et al. (2011) as an example of such a study. But Magrans-Courtney et al.'s conclusions are limited to knee pain and knee stiffness. OBF's purported benefits are not limited to pain and stiffness but to overall general joint health, which Magrans-Courtney et al. does not refute. Second, Magrans-Courtney et al., along with the other studies cited, suffer from another deficiency—namely, that these studies all reference osteoarthritis as their research focus. As mentioned in *Whyble I*, and as the Court will mention again here, it is not plausible that "studies … on the progression of a degenerative bone disease support allegations that Defendant's Products do not provide general joint health benefits." *Id*. Plaintiffs argue that the Court should not wade into a factual inquiry about the strength of evidence at this stage with respect to the studies cited. But when a plaintiff chooses to rely on studies in their complaint in an effort to raise a plausible inference, and the studies not support that position, the plaintiff has not plausibly pled. *See Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 37 (S.D.N.Y. 2023). The Court has made such a finding here.

Plaintiffs also attempt to stretch their argument to suggest that OBF is marketed as a treatment for osteoarthritis to people with osteoarthritis. Plaintiffs do so by arguing: (1) that the product's name "Osteo Bi-Flex" communicates to a consumer that it is designed for osteoarthritis relief; (2) its target consumers suffer from osteoarthritis; (3) Defendant implies that OBF is designed for osteoarthritis relief through its messaging, which states (a) that it provides "joint comfort" and (b) that comfort is the absence of pain and (c) that pain is one of the symptoms of osteoarthritis; and (4) it is implied in its use of the term "joint shield," which indicates that it shields from osteoarthritis. First, Plaintiffs seems to suggest that the term "osteo" in "Osteo Bi-Flex" communicates that it is for osteoarthritis. But the definition of "osteo" is not so narrow and does not necessarily relate to osteoarthritis. "Osteo" derives from Greek and only means relating to bones.[3] Second, "joint comfort" does not mean that the Products are meant to be a pain reliever for all causes. Even if OBF was marketed as a pain reliever (it is not) it would not follow that it is a treatment for osteoarthritis because pain is one of its symptoms. Third, the argument that "joint shield" implies that it shields from osteoarthritis also does not follow and Plaintiffs offer the Court no basis for this other than its own bald assertion. And finally, even if consumers may have thought that OBF was designed for osteoarthritis relief, that is specifically disclaimed by OBF's product label.[4] That label specifies that the Products are "not intended to diagnose, treat, cure, or prevent any disease." (TAC at ¶ 57.) Plaintiffs' argument is thus unavailing. Accordingly, Plaintiffs have failed to plausibly plead that a reasonable consumer would be misled by Defendant's products.

---

[3] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/osteo- (last visited March 24, 2025).

[4] Plaintiffs attempt to rely on *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) in arguing that the disclaimer is insufficient to cure the misrepresentations contained on the Products' packaging. The Court finds this argument unpersuasive. The *Williams* court first made a finding that the product label was misleading before then holding that a disclaimer on the back of the product could not cure the misleading representation on the front. 552 F.3d at 939. Here, the Court, for all the reasons mentioned *supra*, does not believe that the Products' packaging is misleading.

### b. Unfair Business Practices

Plaintiffs allege that Defendant's business practices are unfair. Although "Defendant knows Osteo Bi-Flex is ineffective in reducing or treating joint pain and other symptoms of osteoarthritis," Plaintiffs assert, Defendant targets consumers with joint pain and other symptoms of osteoarthritis. For the same reasons as discussed above, Plaintiffs' unfair business practices claims also fail.

In addition to protecting consumers from false, deceptive, or misleading business acts or practices, the consumer protection statutes of Florida, Illinois, Massachusetts, North Carolina, and Washington further protect consumers from unfair business acts or practices. These statutes generally require that a practice is either offensive to public policy or "immoral, unethical, oppressive, or unscrupulous." *Whyble*, 2023 WL 7165934, at *8 (collecting cases).

Here, as discussed above, Plaintiffs have failed to plausibly allege that Defendant's claims that its Products reduce or treat joint pain are false or misleading. Defendant's advertising and marketing of the Products thus is not offensive to public policy or "immoral, unethical oppressive, or unscrupulous." Plaintiffs therefore do not meet their burden to show that the marketing and advertising of Defendant's Products is unfair. *See La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 517 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) (finding defendant's business practices are not "unfair" under the MCPA where the product packaging would not deceive a reasonable consumer).

### III. STATE COMMON LAW CLAIMS

Similarly, if Plaintiffs cannot plausibly allege Defendant's claims about the health benefits of the Products are false, deceptive, or misleading, then Plaintiffs' common law claims must also fail. Claims for express warranty, unjust enrichment, negligent misrepresentation, and fraud,

12

"which largely hinge on the core theory of consumer deception," require that Plaintiffs allege Defendant made material misrepresentations of fact or omissions. *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *5 (S.D.N.Y. Mar. 1, 2022).

As discussed above, the Court has already determined Plaintiffs have materially failed to allege Defendant's representations about the Products are false, misleading, or deceptive because Plaintiffs have not plausibly alleged that the Products do not provide the purported joint health benefits to consumers. The Court thus dismisses the state common law claims for the reasons already stated.

### a. Express Warranty

Generally, a breach of express warranty claim requires the following elements: (1) a fact, promise, or description of the product; (2) reliance by the buyer; and (3) a breach by the seller. *See, e.g.*, *Avola v. La.-Pac. Corp.*, No. 11-CV-4053 (PKC), 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013) (quoting N.Y. U.C.C. § 2-313(1)(a)) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). For the reasons stated below, Plaintiffs' express warranty claims are dismissed.

Under the laws of the eight states at issue, a breach for express warranty generally requires that the buyer made a false or misleading representation to the seller. *Whyble*, 2023 WL 7165934, at *9 (collecting cases).

Here, Plaintiffs fail to plausibly allege that Defendant's representations about the Products are false or misleading, and thus Plaintiffs have not pled a plausible claim for breach of express warranty.

b. **Unjust Enrichment**

To state a claim for unjust enrichment, a plaintiff must generally allege that defendant retained a benefit and retention of that benefit was unjust. *Whyble*, 2023 WL 7165934, at *10 (collecting cases).

As discussed above, Plaintiffs failed to plausibly allege that Defendant made misrepresentations or deceived consumers about the joint health benefits of the Products. Accordingly, the Court dismisses Plaintiffs' unjust enrichment claims.

c. **Fraud and Negligent Misrepresentation**

Generally, claims for negligent misrepresentation and fraud require a false or misleading statement of material fact. *Id.* Similarly, "[i]t is well-established that the hallmarks of fraud are misrepresentation or deceit." *Id.* at 11.

As discussed above, the Court finds that Plaintiffs have failed to allege a material misrepresentation of fact or omission because Plaintiffs have not plausibly alleged that Defendant's Products do not provide joint health benefits. Accordingly, Plaintiffs' fraud and negligent misrepresentation claims fail.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Because the Court previously identified the precise defects contained in Plaintiffs' Second Amended Complaint, and those defects remain uncured, Plaintiffs' claims are now dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 95 and to terminate the case.

Dated:   March 31, 2025                              SO ORDERED:
         White Plains, New York

                                                     _____
                                                     NELSON S. ROMÁN
                                                     United States District Judge